71 F.3d 179
 151 L.R.R.M. (BNA) 2020, 64 USLW 2464,
131 Lab.Cas. P 11,468
 The HOUSTON LIGHTING & POWER COMPANY, f/k/a Utility Fuels
Inc., a/k/a Houston Industries Inc., Plaintiff-Appellant,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION
NO. 66, Defendant-Appellee.
 No. 94-20693.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 11, 1995.
 
 L. Chapman Smith, Matthew P. Eastus, Baker & Botts, Houston, TX, for appellant.
 Robert Wilson Rickard, Swearingen, Clark & Moore, Houston, TX, for appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before LAY,[1] DUHE and DeMOSS, Circuit Judges.
 DeMOSS, Circuit Judge:
 
 
 1
 In an action to set aside an arbitration award, we face the recurring question of whether an arbitrator exceeded his authority by failing to draw the essence of his decision from the terms of the parties' collective bargaining agreement. The district court found that the arbitrator did not exceed his authority and summary judgment was entered in favor of Defendant. For the following reasons, we reverse and vacate.
 
 BACKGROUND
 
 2
 In 1992, Houston Lighting and Power Company ("HL & P") conducted a reduction in force ("RIF") which resulted in the discharge of approximately 1,100 workers.[2] Among those discharged was Sam Thornal, a heavy equipment operator at HL & P's Limestone, Texas facility, and a member of the International Brotherhood of Electrical Workers, Local Union No. 66 ("the Union"). The Union filed a grievance on Thornal's behalf claiming that HL & P has violated the seniority provision of the collective bargaining agreement ("Agreement") because HL & P retained employees who had less seniority than Thornal.
 
 
 3
 Pursuant to the terms of the collective bargaining agreement, the Union's grievance was submitted to arbitration. At arbitration, the Union challenged the facial validity of HL & P's evaluation process claiming that it violates the collective bargaining agreement because it is arbitrary, unjust, and unreasonable[3]. The Union also argued that, even if the evaluation procedure is deemed legitimate, it was applied to Thornal in an unfair and unreasonable manner. The arbitrator found that the Agreement "allowed the Company to develop some system of evaluating its employees" and that "the procedures utilized by the Company were on their face, reasonably calculated to fairly accomplish the determination of 'ability, skill and qualifications' consistent with the requirements of the [Agreement]." Furthermore, the arbitrator found that the criteria utilized in the evaluation process were "within the scope of the contractually allowable factors of an employees 'ability, skill and qualifications'." Accordingly, the arbitrator held that the Union failed to show that the evaluation process was facially invalid. However, the arbitrator did find that HL & P's application of the evaluation process to Thornal was unreasonable. The arbitrator held that HL & P was not justified in laying-off Thornal because, in the arbitrator's opinion, Thornal deserved a higher evaluation. The arbitrator arrived at this conclusion by reviewing various employee performance ratings and re-assessing the abilities, skills, and qualifications of Thornal as compared to those of other employees. Based upon his own review and reassessment of Thornal's qualifications, the arbitrator drew from his collective bargaining experience "in the federal public sector" and concluded that Thornal had been wrongly appraised. The arbitrator determined that Thornal was entitled to a higher rating and that, with such a rating, under the terms of the Agreement, he should not have been laid-off. The arbitrator ordered HL & P to reinstate Thornal with backpay and seniority, along with the benefits that he would have received had he not been laid-off.
 
 
 4
 Houston Lighting & Power appealed the arbitrator's finding in federal district court. On August 25, 1994, the district court granted Defendant's cross-motion for summary judgment and denied Plaintiff's motion for summary judgment. The district court upheld the arbitrator's findings and entered judgment in favor of the Union. Houston Lighting & Power timely filed a notice of appeal.
 
 DISCUSSION
 
 5
 The sole issue before this Court is whether the arbitrator exceeded his authority under the collective bargaining agreement when he re-evaluated Thornal's qualifications and re-calculated his performance rating. For the following reasons, we conclude that he did.
 
 Standard of Review
 
 6
 Where a party appeals a grant of summary judgment in a suit to vacate an arbitration award, we review the district court's ruling under a de novo standard. HMC Management Corp. v. Carpenters Dist. Council, 750 F.2d 1302, 1304 (5th Cir.1985). The law regarding judicial review of labor disputes is well settled. "So long as the arbitrator's decision draws its essence from the collective bargaining agreement and the arbitrator is not fashioning his own brand of industrial justice, the award cannot be set aside." Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n, 889 F.2d 599, 602 (5th Cir.1989) (quotations omitted), cert. denied, 498 U.S. 853, 111 S.Ct. 148, 112 L.Ed.2d 114 (1990). Notwithstanding this deferential standard of review, federal courts are free to scrutinize an award to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the collective bargaining agreement. Id. See also United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (holding that judicial deference ends where an arbitrator exceeds the express limitations of the contractual mandate). When an arbitrator exceeds his authority, vacation of the judgment is appropriate. See United States Postal Serv. v. American Postal Workers Union, 922 F.2d 256, 258 (5th Cir.1991) (holding that an arbitrator's decision on the merits will not be enforced if the arbitrator exceeded his authority under a collective bargaining agreement).
 
 The Agreement
 
 7
 The relevant portions of the collective bargaining agreement are as follows:
 
 
 8
 Purpose. There shall be no discrimination against any employee by the Company, Union, or any other employee because of race, color, religion, sex or national origin.
 
 
 9
 * * * * * *
 
 
 10
 Article II, Section 1. A grievance, as that term is used in this contract, means any dispute involving the proper application or interpretation of this Agreement, or a claim that an employee has been unreasonably and unjustly discriminated against.
 
 
 11
 * * * * * *
 
 
 12
 Article II, Section 4. The sole function of the arbitrators shall be to determine whether Company or Union is correct with reference to the proper application and interpretation of this Agreement and the arbitrators shall not have any authority to change, amend, modify, supplement or otherwise alter in any respect whatsoever this Agreement, or any part thereof.
 
 
 13
 * * * * * *
 
 
 14
 Article III, Section 5. The Company shall have the exclusive right to determine its operating policies and manage its business in the light of experience, business judgment and changing conditions consistent with the terms and conditions of this Agreement. The Company shall retain all right, power and authority not specifically relinquished in this Agreement.
 
 
 15
 * * * * * *
 
 
 16
 Article IV, Section 7. Seniority.... In the event of ... layoffs, or a permanent reduction in the working force at the facility, where ability, skill and qualifications are equal, length of service at that facility shall govern.... The Company shall determine ability, skill and qualifications, subject to an employee's right to assert a grievance under Article II.
 
 Analysis
 
 17
 The only issue before us is whether the arbitrator exceeded his authority under the Agreement when he re-evaluated Thornal's qualifications and re-calculated his performance rating. The "rule in this circuit, and the emerging trend among other courts of appeals, is that arbitral action contrary to express contractual provisions will not be respected." Delta Queen Steamboat Co., 889 F.2d at 604. If an arbitrator exceeds his authority, vacation of the judgment is appropriate. Container Products, Inc. v. United Steelworkers of America, and its Local 5651, 873 F.2d 818, 820 (5th Cir.1989).
 
 
 18
 In disagreeing with the supervisor's evaluation of Thornal, the arbitrator stated, in relevant part:
 
 
 19
 The Arbitrator routinely hears annual appraisal grievances in the federal public sector. In those cases, if the Arbitrator finds that the grievant has not been accurately and fairly appraised in accordance with law, rule, regulation, or the parties [sic] Master Labor Agreement, he is to set aside the rating. Once having decided to set aside the rating, the Arbitrator must then decide whether he is able to determine from the record before him what the performance appraisal would have been but for management's violation. If he can make such a determination, he may order the appraisal rating that he believes is appropriate.... In this case, the Arbitrator finds that the Company did not give the Grievant a fair appraisal. Moreover, the Arbitrator is able to determine from the record, at least what the minimum performance rating should have been. The Grievant should have received no less than "2" on "Job-Related Characteristics." ... On the element of "Other job-related factors" the Grievant should have been assigned, at minimum, a + 2.... On the other hand, the Grievant should have received the same credit for low absenteeism as was assigned Trammel. Additionally, the Grievant should have been awarded credit for having trained others as was given to Dillard. These are the minimum score changes that the Arbitrator would make based on the record before him.
 
 
 20
 Based upon his re-assessment of Thornal's qualifications, the arbitrator upwardly adjusted Thornal's score and concluded that, in light of the higher score, HL & P was not justified in laying him off. The arbitrator sustained the grievance and reinstated Thornal with backpay and certain benefits.
 
 
 21
 In affirming the arbitrator's finding, the district court held:
 
 
 22
 The submitted issue in the arbitration was whether or not the Company had violated the collective bargaining agreement by laying off Thornal out of line of seniority. The arbitrator found that the Company had violated the agreement and ordered Thornal's reinstatement. Indeed, Plaintiff states in its [summary judgment] brief "The arbitrator's sole function is to determine whether the Union or UFI [now HL & P] was correct in deciding that Thornal was less qualified than the junior employees whom UFI retained over him." This is exactly what the arbitrator did.[4]
 
 
 23
 Summary judgment was granted in favor of the Union.
 
 
 24
 Since arbitration is primarily a matter of contract, an arbitrator's award must "draw its essence from the collective bargaining agreement." United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). In applying the "essence" test, we have declared that an arbitrator's award "must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement." Executone Info. Systems, Inc. v. Davis, 26 F.3d 1314, 1325 (5th Cir.1994) (citations omitted). The arbitrator has no license to "fashion his own brand of industrial justice." Delta Queen Steamboat Co., 889 F.2d at 602. "When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." Enterprise Wheel, 363 U.S. at 597, 80 S.Ct. at 1361.
 
 
 25
 After reviewing both the collective bargaining agreement and the findings of the arbitrator, we conclude that the portion of the arbitrator's award in which the arbitrator re-evaluated Thornal's qualifications did not draw its essence from the Agreement. Article II of the Agreement states that "the sole function of the arbitrators shall be to determine whether [the] Company or Union is correct with reference to the proper application and interpretation of this Agreement." "[A]ny dispute involving the proper application or interpretation of this Agreement, or a claim that an employee has been unreasonably and unjustly discriminated against," is defined by the Agreement as a "grievance."The thrust of the Union's argument is that, while Article IV, Section 7 of the Agreement permits HL & P to determine an employee's ability, skill and qualification, this determination is subject to the grievance procedure under Article II. The Union argues that the grievance procedure gives an arbitrator the authority to re-evaluate the employee's qualifications and then re-calculate that employee's performance rating. The Union argues that these findings by the arbitrator are binding upon HL & P. We disagree.
 
 
 26
 Article IV, Section 7 of the Agreement bestows upon the Company the right to determine an employee's ability, skill, and qualifications, subject to an employee's right to assert a grievance. The phrase "subject to an employee's right to assert a grievance" means that the employee may assert one or both of two contentions: (1) first he may assert that the system and procedures used by the Company in evaluating an employee's ability, skill and qualifications were inconsistent with the terms of the Agreement or were an improper application of the Agreement; and/or (2) secondly, he may assert that the Company discriminated against him because of race, color, religion, sex, or national origin in the evaluation process.
 
 
 27
 We note that the Union has not raised a claim of discrimination. Nor has the arbitrator addressed discrimination in his findings. Accordingly, the nature of the grievance brought by the Union pertains only to the Union's dispute involving the proper application or interpretation of the Agreement. Also, as stated earlier, the arbitrator found that the evaluation process was "reasonably calculated to fairly accomplish the determination of utility, skill and qualifications" and that the criteria used in the process were "within the scope of contractually allowed factors;" he found that Thornal had failed to show that the evaluation process was facially invalid. The phrase "subject to an employee's right to assert a grievance" does not mean that the Company loses its right to make the qualification determination once an employee asserts a grievance. That phrase does not confer upon the arbitrator the right to make a de novo determination of the employee's qualifications. It is important to note that nothing in the Article II, Section I definition of "a grievance" can be rationally interpreted to include the concept that a grievance includes a claim that an employee has been unfairly or incorrectly evaluated for lay off. Furthermore, the arbitrator's reliance upon his experience and practice in other arbitrations in the "federal public sector" is clearly outside the language of the Agreement. The right to make the ultimate determination remains with the Company.
 
 
 28
 If the language of the agreement is clear and unequivocal, an arbitrator is not free to change its meaning. See Delta Queen, 889 F.2d at 602. The Company has the exclusive right to make the employee qualification determinations. Nowhere in the Agreement does it state that redetermination shall be made by the arbitrator. If the arbitrator had found that the evaluation process was not consistent with the Agreement, then the Arbitrator should remand the matter to the Company so that the Company can make the re-determination of the employee's qualifications under another valid process.
 
 
 29
 By performing his own re-evaluation, the arbitrator went beyond the scope of his authority, and beyond the parties' contractual agreement. Accordingly, the judgment of the district court is reversed and the arbitration award is vacated.
 
 
 30
 LAY, Circuit Judge, dissenting.
 
 
 31
 I respectfully dissent.
 
 
 32
 There should be little dispute federal district courts possess limited resources to deal with the tremendous volume of cases filed before them. Our entire judicial system faces constant pressure to expedite our decisional process. Every district judge is challenged through self-education, seminars, and bench books to acquire skills to shorten trials and make expedited decisions. Certainly, one of the more practical shortcuts in pending litigation is for counsel to define the issues the court must decide. The pretrial discovery process is designed to do just that. As clients must rely on the professionalism of their selected lawyers as agents, judges must rely upon counsel to define the issues the courts must decide. After all, the lawyers are the ones who have prepared the cases, filed briefs on both factual and legal issues, and are much more knowledgeable of what the case submitted is about.
 
 
 33
 In the present case, the experienced trial judge followed that procedure in making inquiry of the lawyers: What are the issues before me? The parties submitted their respective briefs and defined the scope of the arbitrator's authority. Relying on HL & P's brief, the trial judge found that the arbitrator did nothing more than what HL & P stated the arbitrator had a right to do. In ruling for the Union, the district judge wrote:
 
 
 34
 The submitted issue in the arbitration was whether or not the Company had violated the collective bargaining agreement by laying off Thornal out of line of seniority. The arbitrator found that the Company had violated the agreement and ordered Thornal's reinstatement. Indeed, Plaintiff states in its brief "The arbitrator's sole function is to determine whether the Union or UFI [now HL & P] was correct in deciding that Thornal was less qualified than the junior employees whom UFI retained over him." This is exactly what the arbitrator did.
 
 
 35
 Houston Lighting & Power Co. v. The Int'l Bhd. of Elec. Workers, Local No. 66, No. H-94-908, at 2 (S.D.Tex. Aug. 25, 1994).
 
 
 36
 The majority now rejects the district court's reliance on HL & P's brief by saying "[i]n the interest of justice, we are reluctant to rely upon what appears to be an obvious misstatement by counsel to support a decision which is adverse to that counsel's client." Ante at 183, n. 4. This overlooks, however, the fact that HL & P previously defined the issue to the arbitrator in similar terms: "[d]id the Company unreasonably and unjustly discriminate against Grievant by terminating him while retaining less senior heavy equipment operators?" (R. at 16.) The district court reasonably relied upon HL & P's counsel's definition of the issues and I find such reliance reasonable. I would affirm the district court based upon HL & P's refinement of the issue. To do otherwise, I respectfully submit, undermines the authority of the district court and creates uncertainty as to whether district courts may rely upon counsel's statement of issues in order to shorten proceedings.[1]
 
 
 37
 I respectfully submit the majority also errs in faulting counsel. HL & P's brief defined the scope of the arbitrator's authority to the district court in the manner that it did because the terms of the collective bargaining agreement required it to do so. HL & P's exclusive right to determine its operating policies must be read in conjunction with Article IV, Section 7, which provides in the event of layoffs, "where ability, skill and qualifications are equal, length of service at that facility shall govern.... The Company shall determine ability, skill and qualifications, subject to an employee's right to assert a grievance under Article II." (R. at 24.) (emphasis added). Article II, Section 1, defines a grievance as "any dispute involving the proper application or interpretation of this Agreement, or a claim that an employee has been unreasonably and unjustly discriminated against." (R. at 28.) (emphasis added). Finally, Article II, Section 4, provides that "[t]he sole function of the arbitrator[ ] shall be to determine whether the Company or Union is correct with reference to the proper application and interpretation of this Agreement." (R. at 27.) (emphasis added). Thus, the arbitrator was expressly authorized by the terms of the agreement, and by the submission of the parties, to determine whether HL & P was correct in deciding that Thornal was less qualified than the junior employees whom HL & P retained over him.
 
 
 38
 The arbitrator found HL & P's evaluation process was facially valid, but he then focused specifically on its application to Thornal. Although previously accepting HL & P's evaluation scheme of "relative ability" as being legitimate, he found that the "decision to terminate the Grievant while retaining Trammel [the other employee with less seniority] ... was [not a] reasonable one." (R. at 4.) In disagreeing with the supervisor's evaluation of Thornal, the arbitrator found that HL & P did not give him a fair appraisal. Based upon the record before him, the arbitrator found that Thornal should have received the same credit for low absenteeism as was assigned another employee, Trammel. He also found that Trammel should have been awarded credit for having trained others as was given to another employee, Dillard.[2] Thus, the arbitrator found that HL & P failed to fairly apply the terms of the collective bargaining agreement in that Thornal was equal in ability, skills and qualifications and yet another employee with less seniority was retained.
 
 
 39
 Although HL & P urges that it had the exclusive right to determine Thornal's ability, skill and qualification, it is also true that the plain terms of Article IV, Section 7 subjects that determination to the grievance procedure within the collective bargaining agreement. It is clear from the terms of the agreement to which HL & P agreed that HL & P's determination was subject to review through the grievance machinery. The grievance provision of Article IV, Section 7 simply cannot be ignored.
 
 
 40
 The arbitrator's explicit language recognizes the precise authorization he was following in deciding the grievance proceeding. In granting the award he wrote "[h]aving found that the Company acted unreasonably and unjustly in the manner that it applied its layoff evaluation process to the Grievant, it was not justified in laying off the Grievant out of line with his seniority while retaining employees with less seniority. Accordingly, the grievance is sustained." (R. at 2.) (emphasis added).
 
 
 41
 In United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987), the Court observed, "[A]s long as the arbitrator is ... acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." While a court may review whether an arbitrator has exceeded his scope of authority, it must resolve all doubts in favor of the arbitrator's authority. See United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960). HL & P's challenge to the arbitrator's methodology of analysis slights this court's opinion in Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co., 918 F.2d 1215 (5th Cir.1990). There Judge Johnson observed:
 
 
 42
 [T]his Court does not review the language used by, or the reasoning of, the arbitrators in determining whether their award draws its essence from the contract. This Court looks only to the result reached. The single question is whether the award, however arrived at, is rationally inferable from the contract. See Local Union 59, Int'l Bhd. of Elec. Workers v. Green Corp., 725 F.2d 264, 268 (5th Cir.), cert. denied, 469 U.S. 833, 105 S.Ct. 124, 83 L.Ed.2d 66 (1984). Indeed, arbitrators are generally not even required to disclose or explain the reasons that underlie their decision. See, e.g., [Antwine v. Prudential Bache Sec., Inc., 899 F.2d 410, 412 (5th Cir.1990) ].
 
 
 43
 Id. at 1219 n. 3.
 
 
 44
 The majority observes "[t]he Company has the exclusive right to make the employee qualification determinations. Nowhere in the Agreement does it state that re-determination shall be made by the arbitrator. If the arbitrator had found that the evaluation process was not consistent with the Agreement, then the Arbitrator should remand the matter to the Company so that the Company can make the re-determination of the employee's qualifications under another valid process." Ante at 184. Thus, the majority appears to support HL & P's additional claim that the arbitrator did not have the authority to provide the remedy of reinstatement and the award of back pay. It is well settled that "courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on error of fact or on misinterpretation of the contract." See Misco, 484 U.S. at 36, 108 S.Ct. at 370 (citing United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960)).
 
 
 45
 It is established law "that though the arbitrator's decision must draw its essence from the agreement, he 'is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies.' " Id. at 41, 108 S.Ct. at 372 (emphasis in original, quoting Enterprise Wheel, 363 U.S. at 597, 80 S.Ct. at 1361).[3]
 
 
 46
 As the Court reminded us in Enterprise Wheel:
 
 
 47
 When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.[4]
 
 
 48
 363 U.S. at 597, 80 S.Ct. at 1361.
 
 
 49
 On the basis of the above analysis, I would think it clear that the arbitrator's opinion drew his decision from the essence of the collective bargaining agreement.
 
 
 50
 I would affirm the judgment of the district court.
 
 
 
 [1]
 Circuit Judge of the Eighth Circuit, sitting by designation
 
 
 [2]
 Houston Lighting and Power Company is a wholly owned subsidiary of Houston Industries, Inc., and the successor in interest to Utility Fuels, Inc
 
 
 [3]
 HL & P evaluated employees though a merit-based system, ranking them on ability, skill and qualifications. The rankings were made by supervisors in the employees' respective job classifications. Depending upon their evaluations, employees were placed in one of three groups: "above average," "average," or "marginal." Employees were ranked only against other employees within the same job classification. In each particular job classification, the lowest-ranking employees were discharged in reverse order until the required RIF terminations were achieved. Seniority was only an issue when the company determined that two employees were of "equal" skill. Absent such a determination, the merit rankings controlled the RIF. The company eliminated two of eight heavy equipment operator positions at its Limestone, Texas facility. Thornal and another employee, "Byers," were the only two heavy equipment operators rated "marginal." They were each terminated
 
 
 [4]
 After a complete review of the record, we find that the statement made by HL & P's counsel in the "Summary of Arguments" section of its brief may be a misstatement or, as HL & P urges, taken out of context from the rest of the argument. It simply does not accurately reflect or summarize the contentions made by HL & P in the body of its summary judgment brief. In our view, the best evidence of what the parties agreed to is found in the Agreement, itself, and not in the summary section of HL & P's brief. In the interest of justice, we are reluctant to rely upon what appears to be an obvious misstatement by counsel to support a decision which is adverse to that counsel's client
 
 
 [1]
 In a habeas corpus case, Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Court observed that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.' " Id. at 753, 111 S.Ct. at 2566-67 (citing Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). In Coleman, the Court cites Link v. Wabash R.R., 370 U.S. 626, 634, 82 S.Ct. 1386, 1390-91, 8 L.Ed.2d 734 (1962) and Irwin v. Department of Veterans Affairs, 498 U.S. 89, 92, 111 S.Ct. 453, 455-56, 112 L.Ed.2d 435 (1990), stating that in "our system of representative litigation ... each party is deemed bound by the acts of his lawyer-agent." Id. at 753, 111 S.Ct. at 2567
 
 
 [2]
 The arbitrator made a detailed objective analysis of HL & P's evaluation of other less senior employees in contrast to Thornal's rating. For example, two employees, Payne and Trammel, received +2 points for lack of absenteeism whereas Trammel had an excellent attendance record and received zero points. Based upon this exacting analysis, it is little wonder the arbitrator found that as to Thornal the supervisor arbitrarily discriminated against him by "deliberately and unreasonably" depriving him of the necessary points to reach an "average" rating. (R. at 5.)
 
 
 [3]
 The Company protests the arbitrator's reference to his knowledge of "grievances in the federal public sector" where once a job rating is set aside, the arbitrator then orders the appraisal rating that he deems appropriate. Thus, the Company urges that the arbitrator is going outside the collective bargaining agreement to make its findings. This colloquy by the arbitrator, in my judgment, simply explains the remedy by which the arbitrator orders the Grievant reinstated. The remedy lies exclusively within the arbitrator's judgment and his analogy to the remedy he has invoked in federal sector cases does not violate his authority. As the Supreme Court explained in Warrior & Gulf
 The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law--the practices of industry and the shop--is equally a part of the collective bargaining agreement although not expressed in it. The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment.
 363 U.S. at 581-82, 80 S.Ct. at 1352.
 
 
 [4]
 Equally relevant is the Supreme Court's additional observation:
 The collective bargaining agreement could have provided that if any of the employees were wrongfully discharged, the remedy would be reinstatement and back pay up to the date they were returned to work. Respondent's major argument seems to be that by applying correct principles of law to the interpretation of the collective bargaining agreement it can be determined that the agreement did not so provide, and that therefore the arbitrator's decision was not based upon the contract. The acceptance of this view would require courts, even under the standard arbitration clause, to review the merits of every construction of the contract. This plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final. This underlines the fundamental error which we have alluded to in United Steelworkers of America v. American Manufacturing Co., [363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) ], decided this day. As we there emphasized, the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.
 Id. at 598-99, 80 S.Ct. at 1361-62.