# UNITED STATES COURT OF APPEALS
## For the Fifth Circuit

--------------------------------

### No. 94-20693

--------------------------------

## THE HOUSTON LIGHTING & POWER COMPANY,
### f/k/a Utility Fuels Inc.,
### a/k/a Houston Industries Inc.,

**Plaintiff-Appellant,**

## VERSUS

## INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 66,

**Defendant-Appellee.**

--------------------------------

Appeal from the United States District Court
for the Southern District of Texas

--------------------------------

December 11, 1995

Before LAY,[1] DUHÉ and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

In an action to set aside an arbitration award, we face the recurring question of whether an arbitrator exceeded his authority by failing to draw the essence of his decision from the terms of the parties' collective bargaining agreement. The district court found that the arbitrator did not exceed his authority and summary judgment was entered in favor of Defendant. For the following reasons, we reverse and vacate.

--------------------------------

[1] Senior Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

## BACKGROUND

In 1992, Houston Lighting and Power Company ("HL&P") conducted a reduction in force ("RIF") which resulted in the discharge of approximately 1,100 workers.[2] Among those discharged was Sam Thornal, a heavy equipment operator at HL&P's Limestone, Texas facility, and a member of the International Brotherhood of Electrical Workers, Local Union No. 66 ("the Union"). The Union filed a grievance on Thornal's behalf claiming that HL&P has violated the seniority provision of the collective bargaining agreement ("Agreement") because HL&P retained employees who had less seniority than Thornal.

Pursuant to the terms of the collective bargaining agreement, the Union's grievance was submitted to arbitration. At arbitration, the Union challenged the facial validity of HL&P's evaluation process claiming that it violates the collective bargaining agreement because it is arbitrary, unjust, and unreasonable[3]. The Union also argued that, even if the evaluation procedure is deemed legitimate, it was applied to Thornal in an unfair and unreasonable manner. The arbitrator found that the Agreement "allowed the Company to develop some system of evaluating its employees" and that "the

---

[2] Houston Lighting and Power Company is a wholly owned subsidiary of Houston Industries, Inc., and the successor in interest to Utility Fuels, Inc.

[3] HL&P evaluated employees though a merit-based system, ranking them on ability, skill and qualifications. The rankings were made by supervisors in the employees' respective job classifications. Depending upon their evaluations, employees were placed in one of three groups: "above average," "average," or "marginal." Employees were ranked only against other employees within the same job classification. In each particular job classification, the lowest-ranking employees were discharged in reverse order until the required RIF terminations were achieved. Seniority was only an issue when the company determined that two employees were of "equal" skill. Absent such a determination, the merit rankings controlled the RIF. The company eliminated two of eight heavy equipment operator positions at its Limestone, Texas facility. Thornal and another employee, "Byers," were the only two heavy equipment operators rated "marginal." They were each terminated.

procedures utilized by the Company were on their face, reasonably calculated to fairly accomplish the determination of `ability, skill and qualifications' consistent with the requirements of the [Agreement]." Furthermore, the arbitrator found that the criteria utilized in the evaluation process were "within the scope of the contractually allowable factors of an employees `ability, skill and qualifications'." Accordingly, tThe arbitrator held that the Union failed to show that the evaluation process was facially invalid. However, the arbitrator did find that HL&P's application of the evaluation process to Thornal was unreasonable. The arbitrator held that HL&P was not justified in laying-off Thornal because, in the arbitrator's opinion, Thornal deserved a higher evaluation. The arbitrator arrived at this conclusion by reviewing various employee performance ratings and re-assessing the abilities, skills, and qualifications of Thornal as compared to those of other employees. Based upon his own review and reassessment of Thornal's qualifications, the arbitrator drew from his collective bargaining experience "in the federal public sector" and concluded that Thornal had been wrongly appraised. The arbitrator determined that Thornal was entitled to a higher rating and that, with such a rating, under the terms of the Agreement, he should not have been laid-off. The arbitrator ordered HL&P to reinstate Thornal with backpay and seniority, along with the benefits that he would have received had he not been laid-off.

Houston Lighting & Power appealed the arbitrator's finding in federal district court. On August 25, 1994, the district court granted Defendant's cross-motion for summary judgment and denied Plaintiff's motion for summary judgment. The district court upheld the arbitrator's findings and entered judgment in favor of the Union. Houston Lighting & Power timely filed a notice of appeal.

## DISCUSSION

The sole issue before this Court is whether the arbitrator exceeded his authority under the collective bargaining agreement when he re-evaluated Thornal's qualifications and re-calculated his performance rating. For the following reasons, we conclude that he did.

### *Standard of Review*

Where a party appeals a grant of summary judgment in a suit to vacate an arbitration award, we review the district court's ruling under a *de novo* standard. HMC Management Corp. v. Carpenters Dist. Council, 750 F.2d 1302, 1304 (5th Cir. 1985). The law regarding judicial review of labor disputes is well settled. "So long as the arbitrator's decision draws its essence from the collective bargaining agreement and the arbitrator is not fashioning his own brand of industrial justice, the award cannot be set aside." Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n, 889 F.2d 599, 602 (5th Cir. 1989)(quotations omitted), cert. denied, 111 S. Ct. 148 (1990). Notwithstanding this deferential standard of review, federal courts are free to scrutinize an award to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the collective bargaining agreement. Id. See also United Paperworkers Int'l Union v. Misco, Inc., 108 S. Ct. 364 (1987)(holding that judicial deference ends where an arbitrator exceeds the express limitations of the contractual mandate). When an arbitrator exceeds his authority, vacation of the judgment is appropriate. See United States Postal Serv. v. American Postal Workers Union, 922 F.2d 256, 258 (5th Cir. 1991) (holding that an arbitrator's decision on the merits will not be enforced if the arbitrator exceeded his authority under a collective bargaining agreement).

–4–

*The Agreement*

The relevant portions of the collective bargaining agreement are as follows:

**Purpose**.  There shall be no discrimination against any employee by the Company, Union, or any other employee because of race, color, religion, sex or national origin.

\* \* \* \* \*

**Article II, Section 1**.  A grievance, as that term is used in this contract, means any dispute involving the proper application or interpretation of this Agreement, or a claim that an employee has been unreasonably and unjustly discriminated against.

\* \* \* \* \*

**Article II, Section 4.**  The sole function of the arbitrators shall be to determine whether Company or Union is correct with reference to the proper application and interpretation of this Agreement and the arbitrators shall not have any authority to change, amend, modify, supplement or otherwise alter in any respect whatsoever this Agreement, or any part thereof.

\* \* \* \* \*

**Article III, Section 5.**  The Company shall have the exclusive right to determine its operating policies and manage its business in the light of experience, business judgment and changing conditions consistent with the terms and conditions of this Agreement.  The Company shall retain all right, power and authority not specifically relinquished in this Agreement.

\* \* \* \* \*

**Article IV, Section 7.**  Seniority. ...In the event of ... layoffs, or a permanent reduction in the working force at the facility, where ability, skill and qualifications are equal, length of service at that facility shall govern.  ...The Company shall determine ability, skill and qualifications, subject to an employee's right to assert a grievance under Article II.

*Analysis*

The only issue before us is whether the arbitrator exceeded his authority under the Agreement when he re-evaluated Thornal's qualifications and re-calculated his performance rating.  The "rule

in this circuit, and the emerging trend among other courts of appeals, is that arbitral action contrary to express contractual provisions will not be respected." Delta Queen Steamboat Co., 889 F.2d at 604. If an arbitrator exceeds his authority, vacation of the judgment is appropriate. Container Products, Inc. v. United Steelworkers of America, and its Local 5651, 873 F.2d 818, 820 (5th Cir. 1989).

In disagreeing with the supervisor's evaluation of Thornal, the arbitrator stated, in relevant part:

> The Arbitrator routinely hears annual appraisal grievances in the federal public sector. In those cases, if the Arbitrator finds that the grievant has not been accurately and fairly appraised in accordance with law, rule, regulation, or the parties [sic] Master Labor Agreement, he is to set aside the rating. Once having decided to set aside the rating, the Arbitrator must then decide whether he is able to determine from the record before him what the performance appraisal would have been but for management's violation. If he can make such a determination, he may order the appraisal rating that he believes is appropriate. ...In this case, the Arbitrator finds that the Company did not give the Grievant a fair appraisal. Moreover, the Arbitrator is able to determine from the reco rd, at least what the minimum performance rating should have been. The Grievant should have received no less than "2" on "Job-Related Characteristics." ...On the element of "Other job-related factors" the Grievant should have been assigned, at minimum, a +2. ...On the other hand, the Grievant should have received the same credit for low absenteeism as was assigned Trammel. Additionally, the Grievant should have been awarded credit for having trained others as was given to Dillard. These are the minimum score changes that the Arbitrator would make based on the record before him.

Based upon his re-assessment of Thornal's qualifications, the arbitrator upwardly adjusted Thornal's score and concluded that, in light of the higher score, HL&P was not justified in laying him off. The arbitrator sustained the grievance and reinstated Thornal with backpay and certain benefits.

In affirming the arbitrator's finding, the district court held:

> The submitted issue in the arbitration was whether or not the Company had violated the collective bargaining agreement by laying off Thornal out of line of seniority. The arbitrator found that the Company had violated the agreement and ordered Thornal's reinstatement. Indeed, Plaint iff states in its [summary judgment] brief "The

arbitrator's sole function is to determine whether the Union or UFI [now HL&P] was correct in deciding that Thornal was less qualified than the junior employees whom UFI retained over him." This is exactly what the arbitrator did.[4]

Summary judgment was granted in favor of the Union.

Since arbitration is primarily a matter of contract, an arbitrator's award must "draw its essence from the collective bargaining agreement." United Steel Workers v. Enterprise Wheel & Car Corp., 80 S. Ct. 1358, 1361 (1960); United Paperworkers Int'l Union v. Misco, Inc., 108 S. Ct. 364, 370 (1987). In applying the "essence" test, we have declared that an arbitrator's award "must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement." Executone Info. Systems, Inc. v. Davis, 26 F.3d 1314, 1325 (5th Cir. 1994) (citations omitted). The arbitrator has no license to "fashion his own brand of industrial justice." Delta Queen Steamboat Co., 889 F.2d at 602. "When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." Enterprise Wheel, 80 S. Ct. at 1361.

After reviewing both the collective bargaining agreement and the findings of the arbitrator, we conclude that the portion of the arbitrator's award in which the arbitrator re-evaluated Thornal's qualifications did not draw its essence from the Agreement. Article II of the Agreement states that "the sole function of the arbitrators shall be to determine whether [the] Company or Union is correct with reference to the proper application and interpretation of this Agreement." "[A]ny dispute

---

[4]After a complete review of the record, we find that the statement made by HL&P's counsel in the "Summary of Arguments" section of its brief may be a misstatement or, as HL&P urges, taken out of context from the rest of the argument. It simply does not accurately reflect or summarize the contentions made by HL&P in the body of its summary judgment brief. In our view, the best evidence of what the parties agreed to is found in the Agreement, itself, and not in the summary section of HL&P's brief. In the interest of justice, we are reluctant to rely upon what appears to be an obvious misstatement by counsel to support a decision which is adverse to that counsel's client.

involving the proper application or interpretation of this Agreement, or a claim that an employee has been unreasonably and unjustly discriminated against," is defined by the Agreement as a "grievance."

The thrust of the Union's argument is that, while Article IV, Section 7 of the Agreement permits HL&P to determine an employee's ability, skill and qualification, this determination is subject to the grievance procedure under Article II. The Union argues that the grievance procedure gives an arbitrator the authority to re-evaluate the employee's qualifications and then re-calculate that employee's performance rating. The Union argues that these findings by the arbitrator are binding upon HL&P. We disagree.

Article IV, Section 7 of the Agreement bestows *upon the Company* the right to determine an employee's ability, skill, and qualifications, subject to an employee's right to assert a grievance. The phrase "subject to an employee's right to assert a grievance" means that the employee may assert one or both of two contentions: (1) first he may assert that the system and procedures used by the Company in evaluating an employee's ability, skill and qualifications were inconsistent with the terms of the Agreement or were an improper application of the Agreement; and/or (2) secondly, he may assert that the Company discriminated against him because of race, color, religion, sex, or national origin in the evaluation process.

We note that the Union has not raised a claim of discrimination. Nor has the arbitrator addressed discrimination in his findings. Accordingly, the nature of the grievance brought by the Union pertains only to the Union's dispute involving the proper application or interpretation of the Agreement. Also, as stated earlier, the arbitrator found that the evaluation process was "reasonably calculated to fairly accomplish the determination of utility, skill and qualifications" and that the

criteria used in the process were "within the scope of contractually allowed factors;" he found that Thornal had failed to show that the evaluation process was facially invalid. The phrase "subject to an employee's right to assert a grievance" does not mean that the Company loses its right to make the qualification determination once an employee asserts a grievance. That phrase does not confer upon the arbitrator the right to make a de novo determination of the employee's qualifications. It is important to note that nothing in the Article II, Section I definition of "a grievance" can be rationally interpreted to include the concept that a grievance includes a claim that an employee has been unfairly or incorrectly evaluated for lay off. Furthermore, the arbitrator's reliance upon his experience and practice in other arbitrations in the "federal public sector" is clearly outside the language of the Agreement. The right to make the ultimate determination remains with the Company.

If the language of the agreement is clear and unequivocal, an arbitrator is not free to change its meaning. See Delta Queen, 889 F.2d at 602. The Company has the exclusive right to make the employee qualification determinations. Nowhere in the Agreement does it state that re-determination shall be made by the arbitrator. If the arbitrator had found that the evaluation process was not consistent with the Agreement, then the Arbitrator should remand the matter to the Company so that *the Company* can make the re-determination of the employee's qualifications under another valid process.

By performing his own re-evaluation, the arbitrator went beyond the scope of his authority, and beyond the parties' contractual agreement. Accordingly, the judgment of the district court is reversed and the arbitration award is vacated.